# ELAINE AND O. F. PETERSON v. MINNESOTA POWER & LIGHT COMPANY.[1]

April 26, 1940.

No. 32,349.

*A. Gordon Rosenmeier* and *Gillette, Nye, Harries & Montague,* for appellant.

*Ryan, Ryan & Ryan,* for respondents.

HILTON, JUSTICE.

Plaintiffs, husband and wife, instituted actions for damages suffered by both parties from injuries inflicted upon the wife by

[1]Reported in 291 N. W. 705.

the alleged negligence of defendant. After verdicts for plaintiffs, defendant moved for judgment notwithstanding or for new trials. The motions were denied. Defendant appeals.

About October 3, 1938, defendant installed an electric kitchen stove in plaintiffs' home. The installation was done pursuant to an agreement which appears to be in the form of an ordinary conditional sales contract except that it is provided: "Should this range not be satisfactory party may return same up to December 1, 1938."

On October 18, 1938, Mrs. Peterson, the wife, went to the stove to remove some rolls that were baking. She knelt on one knee and "used one hand to open the door of the oven and the other I put on the oven switch," which she turned to "off." At this instant a charge of electricity flared before her face. It rendered her temporarily blind. Medical treatment was immediately obtained. The next morning she could distinguish objects, but it was two weeks before she could see clearly. Considerable conflicting medical testimony was introduced bearing on the nature and extent of the injury to Mrs. Peterson's eyes.

The day after the accident, according to plaintiffs, two of defendant's employes came to the Peterson home and worked on the stove. Plaintiffs' only testimony relative to what was done is that one of defendant's salesmen told them that the workmen, who were not witnesses, replaced the oven control.

In the complaints plaintiffs alleged:

"That said flash or electric energy was so caused to be emitted by said stove because of the negligence and carelessness of the defendant in permitting parts of said stove to be defective and in permitting large, dangerous and unusual voltages of electricity to enter into said stove."

At the trial reliance was placed upon *res ipsa loquitur*. Occurence of the event was established. Testimony was introduced from which the jury could find that neither plaintiffs nor anyone else except defendant's workmen touched the mechanism of the

stove or used it in a manner other than it was intended. Defendant did not introduce any evidence on this aspect of the case.

The trial court adopted the *res ipsa loquitur* theory and instructed the jury that if they found that the stove and electric current were under the control of defendant and that plaintiffs "or any other person other than defendant or its agents had done nothing to the mechanical or electrical parts of the stove which would affect the regular or normal operation" then the event itself, if found to be one which does not happen in the usual course of things, could be taken as evidence of negligence.

Several of defendant's assignments of error can be boiled down to the claim that plaintiffs have not proved the causes of action alleged in the complaints. Basis of this is that no evidence was introduced supporting the allegations and that the allegations sound in tort while proof took on the character of a suit for damages for breach of contract. Quick disposal can be made of these contentions. If there was any variance between the allegations and the contract proved (*i. e.,* between a bailment with an option and a conditional sales contract), we fail to see how it is material or prejudicial. Mrs. Peterson was not a party to the agreement and can base her claim on negligence. Mr. Peterson's cause of action has its foundation in the breach of duty to his wife. The litigants are not limited to actions for breach of warranty as defendant urges. As we understand the record, plaintiffs throughout the trial relied upon the theory that they were pursuing a tort remedy. If *res ipsa loquitur* was properly applied by the trial court, the allegations of negligence are sufficiently supported and the burden has been sustained. To this we must direct attention.

Plaintiffs rely upon the proposition that from the event two inferences are permissible: (1) That the flash was caused by defendant negligently permitting an excessive amount of electricity to enter the stove; (2) that the stove was defective due to the negligence of defendant.

Clearly, the jury could find that ordinarily electric stoves do not emit "flashes" of the character experienced by Mrs. Peterson.

Likewise it could infer from the event standing alone that the flash was caused by an excessive amount of current entering the stove from defendant's wires. Defendant had exclusive control of the current and the wires, and the jury could reasonably conclude that it must have been defendant who negligently permitted the current to enter in an excessive amount. On this aspect of the case, the principle expressed in Goar v. Village of Stephen, 157 Minn. 228, 233, 196 N. W. 171, leaves no doubt as to the propriety of instructing as to *res ipsa loquitur*.

A more substantial point presented is whether the second inference mentioned is permissible. One essential prerequisite to the application of *res ipsa loquitur* is that defendant must have exclusive control of the instrumentality causing the harm. 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7044, p. 1121. From this fact reason permits the inference that it must have been defendant who was negligent for fault cannot be traced to any other party. Manifestly the mere occurrence of the event without control by defendant would not justify the conclusion that it was the one responsible.

Control "is not necessarily a control exercised at the time of the injury, but may be one exercised at the time of the negligent act which subsequently resulted in an injury." 3 Cooley, Torts (4 ed.) § 480, p. 386. Necessarily this is so for in many instances defendant's failure to meet the standard of a reasonable man will not manifest itself until a subsequent period; for instance, where a foreign substance is negligently permitted to get into a beverage bottled by defendant. A rigid concept of control results in such holdings as Kilgore v. Shepard Co. 52 R. I. 151, 158 A. 720 (plaintiff sat on a chair in defendant's store. The chair collapsed. Held, *res ipsa* does not apply because plaintiff was in "control" of the chair. See Prosser, "The Procedural Effect of Res Ipsa Loquitur," 20 Minn. L. Rev. 241, 242, note 10). More properly, "all that is necessary is that all factors operating to cause the injury * * * be under defendant's control." Prosser, *Id.* p. 242, note 10. This statement is borne out by reason and a multitude of decisions.

It must therefore be decided whether the record justifies the conclusion that defendant had sufficient control of the mechanism to permit application of *res ipsa loquitur*. After installation, the jury could find that the instrumentality was never improperly used, touched, or interfered with in any way. The control that defendant exercised carried over to the time of the occurrence of the injury. If there was any defect it must have existed at the time the stove was turned over or developed as the result of defendant's default. The flash occurred during the course of normal use after the stove had been in operation slightly more than two weeks. This is a vital factor.

We are not unmindful that *res ipsa loquitur* cannot apply where there is divided control. While the situation here presents a borderline case, we think that there was sufficient control over the mechanism to justify the application of *res ipsa loquitur*. This doctrine is essentially one of evidence rather than of tort law. Whether it should apply is "largely a question of how justice in such cases is most practically and fairly administered." Kleinman v. Banner Laundry Co. 150 Minn. 515, 518, 186 N. W. 123, 124, 23 A. L. R. 479. Defendant had the superior knowledge and the power and duty to exercise competence and care in the supplying of the stove. From the record the conclusion is justified that plaintiffs, whom defendant knew would use the stove, relied upon it to furnish a safe and usable article. They are in such a position that if *res ipsa* does not apply recovery is, as a practical matter, impossible. If defendant could establish that the injury was not due to it, it should have done so. Clearly, citation is not necessary to establish that one who supplies an instrumentality which is dangerous if defective must respond to those injured if he negligently furnishes one that is unsafe or capable of becoming so within a short period of normal use. Inference that defendant did supply such a dangerous instrument was permissible under the doctrine of *res ipsa loquitur*.

We cannot find error in the submission of the case on the theory of *res ipsa loquitur* on either aspect of the case. Since the jury

must have inferred that defendant was negligent, the burden of proof has been sustained, and both verdicts must stand.

There is no merit in the claim that the trial court erred in instructing the jury with respect to defendant's capacity as a supplier of chattels and as a distributer of electricity. Obviously the negligence of defendant might be the result of default in either capacity.

A careful reading of the record forces the conclusion that the assignments of error relating to misconduct of counsel and excessive damages given under the influence of passion or prejudice are unjustified.

Other assignments which deal principally with the charge to the jury need not be discussed. The charge, taken as a unit, was fair and complete. It did not prejudice defendant. In passing, we must comment that defendant's argument that the trial court instructed that defendant must use the "highest degree of care" is the product of a misquotation, undoubtedly unintentional, of the charge to the jury.

We do not decide whether a litigant can rely upon *res ipsa loquitur* when specific acts of negligence are alleged. Nor do we determine whether the complaint alleged specific acts of negligence. The point was not raised. For an able discussion, see Prosser, "The Procedural Effect of Res Ipsa Loquitur," 20 Minn. L. Rev. 241, 263.

There was no error below. The orders appealed from are affirmed.

MR. JUSTICE LORING took no part in the consideration or decision of this case.