**SPINETT, INC., Respondent,**

v.

**PEOPLES NATURAL GAS COMPANY, A DIVISION OF INTERNORTH, INC., Appellant,**

**Sprague Meter, a Division of Textron, Inc., as successors to Economy Governor Company, Defendant.**

No. C8–85–1545.

Court of Appeals of Minnesota.

April 22, 1986.

Lee F. Haskell, Cosgrove, Hanson, Noel & Lulic, Minneapolis, Peter H. Grills, O'Neill, Burke & O'Neill, Ltd., St. Paul, for respondent.

Randall C. Berkland, Blethen, Gage & Krause, Mankato, for appellant.

Steven Gaskins, Faegre & Benson, Minneapolis, for defendant.

Heard, considered and decided by RANDALL, P.J., and PARKER and WOZNIAK, JJ.

## OPINION

PARKER, Judge.

This is a negligence action arising from a natural gas explosion and fire. Peoples Natural Gas Co. appeals from an order denying its motion for a new trial and a judgment entered against it. Spinett, Inc., filed a notice of review, claiming the trial court erred in denying it common law prejudgment interest for the time period before Minn.Stat. § 549.09, subd. 1 (1984), became effective. We affirm and remand.

## FACTS

In the early morning hours of December 28, 1979, a fire destroyed the manufacturing facility of Spinett, Inc., a small company located in Hayfield, Minnesota. The building and most of the equipment and supplies inside it were reported as a total loss. State Fire Marshall Jerry White inspected the premises and determined the cause of the fire was accidental.

Employees of Spinett had smelled natural gas inside the facility on the day before the fire, but did not contact Peoples, the gas distributor. Spinett also encountered problems that day with a radiant heater and a furnace, both supplied by gas controlled by a regulator located outside the building. Several repairmen investigated these problems on the day before the fire, but none of them were employed by Peoples.

A few days after the fire, Spinett's president asked Peoples to send out a serviceman because a furnace in the office building continued to malfunction. The serviceman removed a one-inch coating of ice from the regulator and the regulator vent cover. After the ice was removed, the furnace worked properly. Spinett's president testified that he and the serviceman then had the following conversation:

> I asked * * * "what the heck was the problem?" And he said, "well, it looks like you had full line pressure on your system. Your regulator froze open, and you had full line pressure coming right into your building." And I said, "what does that mean?" and he said, "It means it either blows itself out or blows itself up." And here we were looking at a burned out building and he's telling us that.

The serviceman denied making these statements. The gas regulator is owned, controlled and maintained entirely by Peoples.

At trial the parties disagreed as to the cause of the fire. Spinett called two experts who testified that excess gas pressure, or overpressurization, caused a gas leakage which ignited. Fire Marshall White, not testifying as an expert, stated that he believed "some form of malfunction" on a forklift truck in the building caused the fire. He agreed, however, that it was "certainly not out of the question" for the fire to have resulted from a gas leak and ignition.

The jury returned a special verdict consistent with Spinett's theory that gas overpressurization, as a result of ice and mois-

ture collecting in the regulator, caused the explosion and fire. Peoples was apportioned 55 percent negligence, Sprague Meter 15 percent, and Spinett 30 percent. Total damages were assessed at $347,750, of which $95,750 was for lost profits.

The trial court denied Peoples' motion for a new trial or for judgment notwithstanding the verdict, but agreed to amend the judgment to eliminate any recovery for prejudgment interest prior to July 1, 1984, the date Minn.Stat. § 549.09, subd. 1, became effective.

The clerk entered judgment on May 20, 1985, allowing only part of Spinett's claimed costs. Peoples filed its notice of appeal on August 15, 1985. Subsequent to entry of the May 20 judgment, Spinett moved for certain costs in addition to those allowed by the clerk. The trial court granted the motion on August 15, and an amended judgment was entered October 3, 1985. Peoples appeals from the May 20 judgment.

## ISSUES

1. Did the trial court err in instructing the jury on the doctrine of res ipsa loquitur?

2. Is the evidence sufficient to support an award of lost profits?

3. Did the trial court err in refusing to give the requested instructions concerning failure to produce evidence and superseding cause?

4. Did the trial court abuse its discretion by refusing to admit the state fire marshall's report or by admitting an insurance adjuster's report concerning damages?

5. Did the trial court err in refusing to grant a mistrial based on opposing counsel's question about another fire?

6. Did the trial court abuse its discretion in awarding expert witness fees?

7. Did the trial court err in refusing to grant Spinett common law prejudgment interest?

## DISCUSSION

### I

■ There must be sufficient evidence that a natural gas distributor possessed "exclusive control" of its lines before the res ipsa loquitur instruction may be given in cases involving natural gas explosions. *Mahowald v. Minnesota Gas Co.*, 344 N.W.2d 856, 862–63 (Minn.1984). Exclusive control may be found "where the gas distributor has the non-delegable responsibility to maintain and inspect its mains in the public streets at all times." *Id.* at 863. The application of res ipsa loquitur is proper in such circumstances because "the gas distributor is responsible for the reasonable inspection and maintenance of its lines." *Id.*

■ The evidence indicates that the gas regulator controlled the gas pressure to all the lines and appliances in the Spinett facilities. The regulator was owned and maintained solely by Peoples. Spinett apparently relied entirely upon Peoples to repair and inspect the lines and regulator. These facts are adequate for the jury to find "exclusive control" under *Mahowald.*

■ Further, the mere presence or possibility of other causes is not sufficient to preclude a res ipsa loquitur instruction where the evidence reasonably excludes those causes. *See Rinkel v. Lee's Plumbing & Heating Co.*, 257 Minn. 14, 19, 99 N.W.2d 779, 782 (1959) (negligent plumbing); *Anderson v. Burdick Grain Co.*, 363 N.W.2d 797, 800 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. May 1, 1985) (explosion); *see also Heath v. Wolesky*, 181 Minn. 492, 493–94, 233 N.W. 239, 240 (1930) (res ipsa loquitur instruction conditioned on jury's repudiation of other causes proper). Here, there was no evidence indicating that certain radiant heaters were defective or caused the fire. The only testimony on the heaters was that the valves on one or more of the heaters may have failed due to overpressurization of the gas lines, which hardly indicates the heaters were an independent cause of the explosion.

Similarly, the possibility that a forklift truck on the premises caused the fire was reasonably excluded by the evidence. Fire Marshall White initially testified that he could not render an opinion as to the cause of the fire, either to a reasonable degree of engineering or fire investigation certainty. After a recess, White rendered an opinion to a reasonable degree of fire investigation certainty that the cause of the fire was "some form of malfunction on the forklift truck." Given the indefiniteness of this testimony in the face of the strong testimony of overpressurization, and given the trial court's conditioning of the inference of negligence upon the repudiation of other causes, we think the res ipsa loquitur instruction was proper.

## II

■ Any business, including a new one, may recover lost profits if the loss is proved with sufficient and reasonable certainty. *Leoni v. Bemis Co., Inc.*, 255 N.W.2d 824, 826 (Minn.1977). Establishing loss with a reasonable certainty depends upon the circumstances of the particular case, but the proof may include a company's past performance and its future success. *Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 267 (Minn. 1980).

■ Spinett had been in business five months when the fire occurred. Spinett's accounting expert testified that, based on the company's sales history and subsequent success, Spinett suffered lost profits of $166,000 because of the fire. Even Peoples' financial expert admitted that Spinett's records supported lost profits of $66,000. The evidence, particularly of the company's subsequent success, therefore provided a reasonable basis for the jury's award of $95,750 as lost profits.

## III

Peoples claims the trial court abused its discretion when it refused to give two of Peoples' requested jury instructions. We find no abuse of discretion on either of these claims.

■ Peoples requested an instruction on the inferences that might be drawn from a party's failure to produce evidence. Commentators recommend that such an instruction not be given in a typical case. 4 Minnesota Practice, Jury Instruction Guides II, 26 G–S, at 23 (2d ed. 1984). Spinett's president testified that he disposed of the forklift truck several months after the fire because the city council had insisted that the company clean up the fire site. There was no evidence that Spinett intended to conceal evidence when it sold the forklift truck as salvage. Fire Marshall White had an opportunity to examine the truck soon after the fire and was able to describe to the jury in detail the appearance of the truck and the observations that led him to believe it to be the source of the fire.

■ Similarly, Peoples was not entitled to an instruction that the failure of the other repairmen to detect the overpressurization problem could be a superseding cause of the explosion. The evidence did not indicate that these repairmen worked on the gas lines or that they possessed special knowledge of gas distribution systems. Their presence on the premises was a result of the malfunctioning gas regulator. Faced with this evidence, the trial court properly concluded that an instruction on superseding cause was unwarranted. *See Regan v. Stromberg*, 285 N.W.2d 97, 100 (Minn.1979) (cause asserted to be superseding must not have been brought about by original negligence and must not have been reasonably foreseeable by defendant). We hold the trial court did not abuse its discretion in declining to give the requested instruction.

## IV

■ The trial court ruled that Fire Marshall White's report was inadmissible hearsay not within the public records exception of Minn.R.Evid. 803(8) on the ground that it contained opinions. The trial court also ruled that the report was simply cumulative evidence of the testimony given by

White. Since White was allowed to testify fully on the contents and conclusions of the report, we agree that the report was simply cumulative and was properly excluded. We therefore do not determine the applicability of Minn.R.Evid. 803(8) to these facts.

▉ Further, the trial court did not abuse its discretion in admitting an insurance adjuster's report which itemized Spinett's losses. The report was admissible either as a business record under Minn.R. Evid. 803(6) or under Minn.R.Evid. 1006 as a summary of a witness' testimony for use by the jury.

## V

▉ Peoples moved for a mistrial when Spinett's counsel asked a fireman it had called as a witness about another fire in a nearby mobile home.

Q: [I]sn't it true that [the owner of the mobile home] had a fire caused by over-pressurization from the Peoples Gas Company regulator?

The trial court instructed the jury to disregard the question and denied Peoples' motion.

The trial court did not abuse its discretion in refusing to grant a new trial. The record shows that a gas serviceman had already testified as to one other incident of overpressurization at another business where a regulator valve stuck open. We do not consider counsel's conduct "so prejudicial that it would be unjust to allow the result to stand." *See Jack Frost, Inc. v. Engineered Building Components*, 304 N.W.2d 346, 352 (Minn.1981). The evidence more than adequately supports the verdict; the conduct of Spinett's counsel did not prejudicially affect the result.

## VI

▉ The trial court awarded expert witness fees of over $11,000 to Spinett.[1]

Rule 11 of Part I of the Code of Rules for the District Courts deals with allowance of expert witness fees and provides:

The amount allowed shall be in such amount as is deemed reasonable for such services in the community where the trial occurred and in the field of endeavor in which the witness has qualified as an expert. No allowance shall be made for preparation or in conducting of experiments outside the courtroom by the expert. The judge in setting the fee * * * is governed by the provisions of [Minn. Stat. § 357.25].

At the hearing challenging the requested fees, the only documentation provided the trial court on the fees was an affidavit of Spinett's trial counsel. There was no evidence of the normal hourly charges of Spinett's experts or of the hours they actually spent at trial or preparing for trial. The record does not make clear whether the trial court followed the directives of Rule 11. We therefore remand this issue to allow the trial court to receive further evidence under the guidelines of the rule and Minn.Stat. § 357.25 (1984). *See also Mohwinkel v. City of North St. Paul*, 357 N.W.2d 174, 176 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Feb. 19, 1985).

## VII

▉ On Peoples' motion the trial court awarded prejudgment interest only from July 1, 1984, the effective date of Minn.Stat. § 549.09, subd. 1 (1984). *See* 1984 Minn. Laws ch. 472, § 2. Unless governed by statute, prejudgment interest on unliquidated claims is allowed only where the damages are readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depends upon contingencies or upon jury discretion. *Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 518, 189 N.W.2d 499, 504

---

1. A trial court order determining costs may be reviewed on an appeal from the judgment, even where the judgment has been entered prior to the order determining costs. *See Fall v. Moore*, 45 Minn. 517, 518, 48 N.W. 404, 405 (1891) (second case) ("[f]or the purposes of appeal * * the order [allowing or adjusting costs] may be treated as if made before the judgment and as affecting the judgment"). *See also* Minn.R.Civ. App.P. 103.04 (on appeal from a judgment, this court "may review any order * * * affecting the judgment").

(1971); *Moosbrugger v. McGraw-Edison Co.*, 284 Minn. 143, 160, 170 N.W.2d 72, 82 (1969). The trial court concluded that while some of the property damaged by the fire was totally destroyed, other property had some salvage value. Thus, the trial court's finding that Spinett's property damages were not readily ascertainable was not clearly erroneous.

■ Similarly, the jury's calculation of lost profits depended heavily on jury discretion in choosing the point in time that Spinett's subsequent success would have occurred, but for the fire. Prejudgment interest is not appropriate when calculation of damages rests largely in the jury's discretion. *See Polaris Industries v. Plastics, Inc.*, 299 N.W.2d 414, 418 (Minn.1980). The trial court did not err in refusing to award prejudgment interest for the period prior to July 1, 1984.

## DECISION

The judgment is affirmed in all respects, except that we remand the issue of expert witness fees to the trial court. On remand the trial court should receive additional evidence and make findings which can support its award of expert witness fees.

Affirmed and remanded.